[S. F. No. 3969.   In Bank.—July 10, 1905.]

JEAN PON, Respondent, v. GEORGE W. WITTMAN et al., Appellants.

INJUNCTION—INJURY TO BUSINESS—PROTECTION OF HOUSES OF PROS-
TITUTION—COMMON PASSAGEWAY—INTERFERENCE BY POLICE OF-
FICERS.—An injunction cannot be maintained to prevent interference
by police officers to the injury of the plaintiff's business as the
proprietor of a restaurant and cigar-stand, where it clearly appears
that the business is established in a common passageway which is
the sole entrance, by means of swinging doors, to houses of pros-
titution, and that the object of the application is the protection
of the houses of prostitution against the officers of the law.

ID.—PUBLIC NUISANCES—DUTY OF POLICE DEPARTMENT—RIGHT OF AC-
CESS — SWINGING DOORS. — Houses of prostitution are public
nuisances, which it is the duty of the police department of the
city to prohibit and suppress by all reasonable, legitimate, and
peaceable means; and they have the right of access thereto through
any public entrance used by visitors.  The fact that there are
swinging doors across the sole passageway leading thereto does
not make the approach less a public one.

ID.—PROPER INQUIRIES OF VISITORS—LEGITIMATE OBJECT—INCIDENTAL
INJURY TO BUSINESS UPON PASSAGEWAY.—The police department
violated no rights of the plaintiff in placing police officers near

the entrance to such houses of prostitution, or in making inquiries of persons about to enter therein, where their action was aimed solely at the houses of prostitution and to procure evidence relating thereto, and was legitimate and proper to that end, without intimidation or coercion, or preventing any persons from entering upon the public passageway or upon the premises of the plaintiff if they chose to do so. If the presence of the officers or their inquiries had the further effect of deterring persons from entering the premises or patronizing plaintiff's business, it was but an incident to the location of his business upon the public passageway to houses of prostitution and his reliance in large measure for support from patrons thereof.

ID.—FAILURE TO FIND UPON MATERIAL ISSUES—ANSWER—EVIDENCE—REVERSAL OF JUDGMENT AND ORDER.—Where an injunction was granted upon findings in support of the allegations of the complaint for interference of the police officers with plaintiff's business, and the court failed to find upon material issues raised by the answer that plaintiff's premises were the entrance to places in the rear thereof used and resorted to nightly for purposes of prostitution by a large number of lewd, vicious, idle, and vagrant characters, who assembled on said premises, and were a constant menace to the peace and quiet of the neighborhood; that suppression thereof by the police department was necessary, and that the acts of the defendants had been done to enforce the law of the state and the ordinance of the city and county, and the evidence without conflict supported the answer and showed that the police had done no act warranting an injunction, the judgment and order denying a new trial must be reversed for failure to find upon such material issues.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

Davis Louderback, and Lewis F. Byington, for Appellants.

A court of equity will not allow itself to become a handmaid to iniquity of any kind. (*Kreamer* v. *Earl*, 91 Cal. 118, 27 Pac. 735; *Morrill* v. *Nightingale*, 93 Cal. 458, 27 Am. St. Rep. 207, 28 Pac. 1068, 98 Am. Dec. 103; *Wright* v. *Rindskopf*, 43 Wis. 348; *Weiss* v. *Herlichy*, 23 App. Div. 608, 49 N. Y. Supp. 81; *Prendorill* v. *Kennedy*, 34 How. Pr. 416; *Spalding* v. *Preston*, 21 Vt. 9, 50 Am. Dec. 68; *City of Chicago* v. *Wright*, 69 Ill. 325; *Crawford* v. *Wick*, 18 Ohio St. 190, 98 Am. Dec. 103; *Stanton* v. *Allen*, 5 Denio, 434, 49 Am.

Dec. 282; *Coppell* v. *Hall*, 7 Wall. 558; *Oscanyan* v. *Arms Co.*, 103 U. S. 268; *Holladay* v. *Patterson*, 5 Or. 177; *Fincke* v. *Police Commissioners*, 66 How. Pr. 326, 327; *Sterman* v. *Kennedy*, 15 Abb. Pr. 201; *Kramer* v. *Police Department*, 53 N. Y. Sup. Ct. 492, 497; *In re Sawyer*, 124 U. S. 200, 8 Sup. Ct. 482.) The keeping of a bawdy-house is a public nuisance; and such a house is a disorderly house, having a tendency to disturb public peace. (1 Bishop on Criminal Law, sec. 80; 4 Blackstone's Commentaries, 168; *Jacobowsky* v. *People*, 6 Hun, 524; *Rogers* v. *People*, 9 Colo. 452, 59 Am. Rep. 146, 12 Pac. 843; *People* v. *Hanrahan*, 75 Mich. 617, 42 N. W. 1124; *King* v. *People*, 83 N. Y. 590.)

George D. Collins, for Respondent.

The fact that prostitutes were patrons of plaintiff's business cannot affect his right to equitable relief. (*Millikan* v. *Weatherford*, 54 Tex. 388, 38 Am. Rep. 629; *Paralee* v. *Camden*, 49 Ark. 165, 4 Am. St. Rep. 35, 4 S. W. 654; *Ely* v. *Niagara County*, 36 N. Y. 297; *Welch* v. *Stowell*, 2 Doug. (Mich.) 332.) Injunction lies to restrain threatened abuse of authority under color of office. (*Flood* v. *Van Wormer*, 147 N. Y. 288, 41 N. E. 569; 2 High on Injunctions, secs. 1308, 1309.) An officer's authority to make arrests without a warrant is limited to felony, or a breach of the peace, or a misdemeanor committed in his presence. (Pen. Code, sec. 386; 2 Am. & Eng. Ency. of Law, 2d ed., pp. 869, 870, 878, 879, 882; *In re Way*, 41 Mich. 304, 1 N. W. 1021; *Kurtz* v. *Moffitt*, 115 U. S. 487, 6 Sup. Ct. 148; *People* v. *Denby*, 108 Cal. 57, 40 Pac. 1051.) Injunction will lie to restrain a continuing trespass upon plaintiff's private rights the tendency of which is to destroy a legitimate business. (*North* v. *Peters*, 138 U. S. 271, 11 Sup. Ct. 346; *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 12, 19 Sup. Ct. 77; *Sherry* v. *Perkins*, 147 Mass. 212, 214, 9 Am. St. Rep. 689, 17 N. E. 307; *Vegelehn* v. *Gunter*, 167 Mass. 92, 57 Am. St. Rep. 443, 44 N. E. 1077; *Consolidated etc. Wire Co.* v. *Murray*, 80 Fed. 811; *Cleveland etc. Ry. Co.* v. *Cleveland*, 94 Fed. 385, 395; *Kellogg* v. *King*, 114 Cal. 387, 388, 55 Am. St. Rep. 74, 46 Pac. 166; *Smithers* v. *Fitch*, 82 Cal. 158, 22 Pac. 935; *Morton Bros.* v. *Pacific Coast S. S. Co.*, 122 Cal. 352, 55 Pac. 1; *Meldelson* v. *McCabe*, 144 Cal. 230, 103 Am. St. Rep. 78, 77 Pac. 715.)

Henry Ach, *Amicus Curiæ,* also for Respondent.

The liberties of the people cannot rest upon the surmises of police officers that some petty offense has been committed, and equity will prevent police officers from transcending their powers. (Dillon on Municipal Corporations, secs. 210, 906, 914; *In re Kellam,* 55 Kan. 700, 41 Pac. 960; *Pinkerton* v. *Verberg,* 78 Mich. 573, 18 Am. St. Rep. 473, 44 N. W. 579; Vickers on Police Officers, sec. 68; *Hale* v. *Burns,* 44 Misc. 1, 89 N. Y. Supp. 711, 713; *People* v. *Glennon,* 37 Misc. 1, 74 N. Y. Supp. 794; *Hertz* v. *McDermott,* 45 Misc. 28, 92 N. Y. Supp. 803.)

LORIGAN, J.—This action was brought to obtain an injunction.

The complaint, which was filed February 18, 1903, alleges (in the essential particulars necessary for consideration upon this appeal) that on February 1st of that year, plaintiff was, and at the time of filing the complaint continued to be, the owner of a certain public restaurant and cigar-stand, dependent for their existence upon public patronage, and situated at No. 1129 Dupont Street, in the city and county of San Francisco; that ever since February 1, 1903, the defendants George W. Wittman, chief of police of said city and county, and James T. Donovan, sergeant of police thereof, have had stationed and located upon said premises, where plaintiff's said business is situated, at No. 1129 Dupont Street, in relays by day and night, a large number of uniformed police officers, for the purpose of intercepting, intimidating, and preventing, and said officers, at the direction of defendants, have intercepted, intimidated, and prevented, all persons desiring to patronize the business of plaintiff, from entering said premises for that purpose, and from patronizing said business, and that said defendants threaten to continue to keep said police officers on said premises, and to maintain a blockade thereof and of said business; that plaintiff has already sustained damages by said acts in the sum of five thousand dollars, and that, if permitted to continue, said acts will entirely destroy said business, to the great and irreparable injury of plaintiff.

The prayer of the complaint is, that the defendants, and all persons acting under their direction or authority, be perpetually enjoined from entering into or upon, and from inter-

fering with the plaintiff's quiet and peaceable possession and enjoyment of said premises, and from interfering in any manner not authorized by law, with, or intimidating or preventing persons from patronizing said restaurant and cigar business, and from picketing and blockading the same by means of police officers, or otherwise.

The answer denies, among other things, that defendants intercepted, intimidated, and prevented persons from entering said premises, or that they interfered with and intimidated the customers of the plaintiff.

As a separate answer it is averred, in effect, that the premises described in plaintiff's complaint, and more particularly 1129 Dupont Street, is the entrance to a certain court in the rear of said 1129 Dupont Street, and that the said court was, on the 1st of December, 1900, and has continuously ever since been used for the purposes of prostitution, and contains numerous small rooms, designated as "cribs," which are resorted to nightly by many women for the purposes of prostitution; that by reason of the said use of said premises a large number of lewd, vicious, idle, and vagrant characters did assemble, and now assemble, on said premises, and were a constant menace to the peace and quiet of the neighborhood of said premises; that it is absolutely necessary for the preservation of peace and good order that constant supervision of the aforesaid premises should be had by the police force of said city and county, and that the acts of these defendants have been done with the object of enforcing certain provisions of the Penal Code of the state and certain ordinances of the city and county of San Francisco.

Upon the trial the court found, among other things, that the defendants Wittman, as chief of police, and Donovan, as sergeant of police, respectively, did use and employ, under color of their official authority, a large number of uniformed police officers of said city and county, to locate and station themselves upon the said premises where plaintiff's said businesses were situated, to wit: "At No. 1129 Dupont Street in the said city and county of San Francisco, and did there establish and maintain said police officers as pickets against the said premises, and said defendants did then and there by means of said police officers establish and maintain a blockade of said premises, and did intercept and intimidate and pre-

vent a large number of persons desiring to patronize plaintiff's said businesses from entering upon said premises for that purpose, and did thereby prevent them from patronizing, and in consequence they did not patronize the said businesses of plaintiff, and all of said acts were committed by them under color and pretense of their official authority as such police officers, and without right; that none of said acts of the defendants . . . or of said police officers . . . have been committed under or in obedience to or in execution of any order, writ, warrant or process of any court or judge, or of any authority known to the law, nor under the pretense or color of any such order, writ, warrant, process, or authority, nor in making any arrest of any person on a criminal charge; that the said plaintiff, Jean Pon, was never at any time interested in or concerned in any respect in the business of prostitution, nor in prostitution either upon said premises or elsewhere.'' Upon its findings the court concludes that the plaintiff is entitled to a writ of injunction, as prayed for in the complaint, perpetually restraining, enjoining, and prohibiting the defendants and all police officers of the said city and county, and all persons acting under the direction and control, or by the order or authority of the defendants, from entering into or upon, and from in any manner whatever interfering with or infringing upon, the said plaintiff's quiet and peaceable possession and enjoyment of the said premises, No. 1129 Dupont Street, in the city and county of San Francisco, and from in any manner not authorized by law interfering with or intimidating or preventing any person or persons from patronizing the said restaurant business or the said cigar business of the said plaintiff, and from in any manner whatever impairing or injuring either the said restaurant business or the said cigar business of the said plaintiff, and from in any manner whatever picketing or blockading the said premises No. 1129 Dupont Street, either by means of police officers, or otherwise, or at all, and from entering upon the said premises No. 1129 Dupont Street, or any part thereof, unless in the execution of the order or judgment or writ or warrant or process of some court or judge of competent jurisdiction, particularly describing the place to be searched, or the persons or things to be seized, or unless entry is made upon said premises to arrest a person, or to arrest

persons then engaged in the commission or attempted com-
mission of crime in the presence or view of the police officer
or police officers making the arrest, and such crime was at-
tempted, or was then in the course of commission, in the view
or presence of such police officer, prior to and at the time of
his making the entry upon said premises for said purpose,
or unless in making an arrest for treason or felony, or in
making an arrest for breach of the peace when committed in
the view or presence of such police officer, by means of loud
and tumultuous noises, or by boisterous conduct disturbing
the public peace.

A judgment to this effect was subsequently entered. The
defendants moved for a new trial, specifying as grounds there-
for insufficiency of the evidence to justify the findings; that
the decision of the court was against the evidence; that the
court failed to pass upon all the material issues of fact in-
volved in the action and raised by the pleadings; that the
decision of the court is against law.

There is practically no conflict in the evidence in this case.
Dupont Street is a public street of the city and county of
San Francisco, and the premises No. 1129 have their en-
trance on the west side thereof. These premises, in the
absence of a diagram, may be described as located in the
general shape of the letter T. The upper horizontal part
of the letter represents a large court or area, the entrance to
which from Dupont Street is represented by the perpendicu-
lar portion of the letter. This entrance, or passageway, some
fifty feet in length and varying width, opens on the west side
of Dupont Street, runs back westerly, and at the other end
thereof opens into and connects with the court or area which
runs north and south,—the said passageway extending from
Dupont Street thereto. Said passageway is for some distance
off of Dupont Street a covered area, but is uninclosed over-
head as it approaches the main court, which is also open.
This passageway was formerly a store, which was changed
and altered by removing the front and rear walls, so as to
connect it directly with the main court in the rear. Across
this passageway, and located about twelve feet inside the
entrance from Dupont Street, are a pair of swinging doors—
swinging outwards and inwards. The bottoms of these doors
are about two feet from the ground and the tops several

feet from the ceiling. The restaurant and cigar-stand of plaintiff—a combined business—are located on the north side or wall of said entrance, to the west of, and beyond and further in the said passageway than where the swinging doors are situated. The front door of said restaurant opens from said passageway; the restaurant has no entrance on Dupont Street. On the south side of said passageway is located a saloon, No. 1127 Dupont Street, with its entrance on that street. Formerly there was a door opening from said saloon into said passageway and one at the rear thereof, which abuts on the court and opened into it, but both doors had been nailed and effectually closed up. There are buildings fronting all around the said main court, and extending also along Dupont Street on the north and south side of said passageway. The only entrance or passageway, and the only means of access to or egress from said premises No. 1129 Dupont Street, to said court, or restaurant, or cigar-stand, is this entrance or passageway from Dupont Street. It is the common and only entrance whereby access to the entire premises is obtained.

In the court into which this passageway leads from Dupont Street, in the buildings fronting thereon, are thirty-three "cribs," each consisting of a bedroom, with one front door and one front window; and in a two-story house, also fronting on the said court, are six additional "cribs," similarly arranged. The "cribs" on the ground floor are numbered from 1 to 28 inclusive; those on the second story are designated by letters from A to F inclusive. These "cribs" at the time involved, and prior thereto, were occupied by thirty-three women, who were common prostitutes. All of the said buildings on said court are houses of common prostitution, resorted to for the purpose of prostitution. These premises are not only a place of common prostitution, but a place of unnatural and bestial practices and vices and indecent exposures. At the time of the trial the premises within the court were occupied by these women under the same conditions and circumstances.

The restaurant conducted by plaintiff has in it two tables and eleven chairs, with a little cigar-stand within the restaurant. As to the patronage of this restaurant the plaintiff testified that it was patronized by persons from the outside

and by the inmates of the houses of prostitution. Whether these persons from the outside were persons who visited the premises No. 1129 solely to obtain their meals at his restaurant and then withdraw, or whether they were persons who visited and patronized his restaurant while visiting inmates of the houses of prostitution, is in doubt from the evidence. However, the regular meals—dinner, supper, and "short orders"—of the inmates of these houses of prostitution were furnished them from his restaurant; they were taken by himself or his employees to their rooms—though some of the inmates came to the restaurant for their meals. The "cribs" were cleaned out each day by the plaintiff, and he attended to the changing of the bedclothes in the rooms, as it became necessary.

When this action was commenced—February 18, 1903—a restraining order was issued. For a long time prior thereto police officers had passed through said entrance, both in uniform and in civilian dress, for the purpose of making observations and obtaining evidence of what was going on in these premises. As the result of such observations and the knowledge acquired, arrests were made on different occasions between January 1st and the date of the restraining order. On one of these occasions twenty-three or twenty-five women were arrested, on another four, and at another one, and all pleaded guilty. The entrance of the officers on the premises, at all times, was made peaceably and quietly, and without protest or objection.

During the period from February 1 to February 19, 1903, two police officers in full uniform were, in relays, stationed by the defendants on the sidewalk, away from, but near, the common entrance and passageway to all these premises, from a quarter to three in the afternoon to two o'clock in the morning, with directions to ask the names and addresses of parties who intended to enter, and, if they were voluntarily given, to make note of them. These officers were not to enter upon the premises. The persons whose names were obtained were to be thereafter used as witnesses. Other officers than those stationed near the entrance went in and out of the premises as they saw fit, and large numbers of people were going in and coming out at all times. The stationed officers were not instructed to, nor did they, prevent any one from entering

or visiting the premises, nor did they intimidate or coerce any one, or attempt to do so. What was done was done peaceably and quietly. Some people who were asked their names walked away from the premises. The only testimony that any of these officers who were asking the names of persons entered upon the premises is that of plaintiff, who testified that on two occasions he saw officers entering beyond the swinging doors, and heard them ask persons for their names and addresses. This was all they did. The only evidence that any of the persons accosted by the officers were patrons of the restaurant or cigar-store of plaintiff was that two of them were. None of the officers spoke to plaintiff, nor did · any of them enter the restaurant or cigar-store. This was the full extent to which any "picketing" or "blockading" of the premises was done.

At no time was this passageway from Dupont Street used exclusively as an approach to the restaurant of plaintiff, but, on the contrary, it was at all times a common passageway between Dupont Street and the restaurant, and the house of ill-fame beyond it—a passageway used by the general public at all times.

It further appears in evidence that since 1888 one P. Marsicano has been the owner in fee of the premises No. 1129 Dupont Street, consisting of said court where these houses of prostitution are situated and the entrance thereto from Dupont Street; that in 1891 he leased said premises, designating them as 1129 Dupont Street, to one P. Vincent for a period of four years, and that one George Sellinger succeeded to such leasehold interest, which, under the general designation of 1129 Dupont Street, included the court where these houses of prostitution are located, and the passageway was designated to be and is the only approach to the area where these houses of prostitution are.

While in the complaint the business of plaintiff is referred to generally as "situated at No. 1129 Dupont Street," and the injunction runs against the appellants to restrain them not only from interfering with the business of plaintiff, but also "from entering upon the said premises No. 1129 Dupont Street," etc., the evidence clearly shows that the premises No. 1129 Dupont Street do not consist alone of plaintiff's restaurant and cigar business, but includes the common

CXLVII. Cal.—19

passageway between Dupont Street and these houses of prostitution in the rear, the court in which they are located, and plaintiff's business. They all constitute one premises, under the designation of 1129 Dupont Street.

There is some evidence of suits brought by Vincent, by Sellinger, and by one Lair against the defendants, similar to this one, for the purpose of enjoining the action of defendants relative to these premises generally. But this evidence attempted to be introduced on the part of appellants is so vague, uncertain, and indefinite that it is of no value in the consideration of this appeal, and no further reference will be made to it. Lair is the owner of the saloon heretofore referred to, situated on the south of this passageway, and is the one where the entrances therefrom, both into the passageway and into the court, were effectually closed up so as to prevent entry into either from the saloon. It is from him that the plaintiff rents the restaurant and cigar-store, but whether Lair is the lessee under the original lease to Vincent or its assignment to Sellinger the evidence fails to disclose.

These facts which we have recited are the main facts proven in the case, and with these before us we will approach the consideration of the points made for a reversal on this appeal.

It is a very serious question in this case whether the evidence does not show such a relation between the plaintiff and his business and the existence of these houses of prostitution, and such a material interest on his part in their protection from all efforts toward suppression and abatement upon the part of the police department of the city of San Francisco as should have precluded the lower court from granting him the injunction prayed for. It could, under the evidence, have been insisted with great force that on account of the peculiar situation of plaintiff's restaurant, and its seclusion from the main public thoroughfare,—its location on a passageway within swinging doors, which constituted it, with the court in which these houses of prostitution were situate, one general premises; the fact that it had no direct entrance for public patronage from Dupont Street; its meager facilities for the accomodation of patrons; all means of communication with these houses of prostitution closed up save through this common entrance; the only definite and

clear evidence of patronage showing that it was derived from inmates of these houses, and the personal duties of the plaintiff relative to these houses,—all the circumstances, we say, would have furnished reasonable and satisfactory grounds for holding that this business of plaintiff's is, in effect,— whether in fact held under separate lease from the other premises and under the exclusive control of the plaintiff,— still intimately connected with, directly contributory to, and supported and sustained by, the business of prostitution maintained in the court adjoining it. And while plaintiff insists that he is not interested in said houses of prostitution, yet, under the evidence, this·could amount to nothing more than that it shows he has no interest in them as lessee or proprietor which would make him legally responsible for their existence. His business relations to them, however, were such, and the success of his business was so dependent upon their maintenance there, and he is so directly benefited by their perpetuation, that the good faith·of his application in this case might well be questioned, as it might be equally questioned whether he came into court with such clean hands and a clear conscience as entitled him to invoke the equitable powers of the court to interfere by injunction with the execution or enforcement of the criminal laws of the state or the municipality, or to restrain an executive branch of the city—the police department—in an endeavor to discharge its duties. (*Weiss* v. *Herlichy*, 23 App. Div. 608, 49 N. Y. Supp. 81.)

This was a matter, however, primarily for determination by the lower court, and as it did not feel warranted in taking this view of the case, we will discuss this feature no further, preferring to dispose of the appeal upon its merits, and upon considerations which will, to some extent, serve for future guidance.

Among other grounds urged for a reversal it is insisted by appellants that it was made an issue in the case by them, and the court failed to find, whether the premises described in plaintiff's complaint generally as No. 1129 Dupont Street was the entrance to that certain court in the rear of the premises No. 1129 Dupont Street, and whether said court itself, prior to December 1, 1901, and continuously up to the time when the alleged interference by the police officers occurred,

contained houses of prostitution, consisting of numerous small rooms designated as "cribs," resorted to nightly by many prostitutes for the purpose of prostitution.

The court did not find upon this issue, and it should have done so. It was one of the main issues in the case,—the crucial issue from the finding upon which was to be determined whether the conduct of the defendants complained of by plaintiff was legal or illegal. Upon this issue the evidence was abundant, and all one way, sustaining the claims of appellants that the entrance to No. 1129 was the common and public entrance, both to the restaurant and the court at the rear thereof, and that said court consisted exclusively of houses of prostitution.

Under such a finding, and the evidence which would have justified it, there was nothing in the conduct of the appellants in the case at bar of which the plaintiff could be heard to complain here, or which would have warranted the granting of the injunction.

Under the Penal Code of this state, keeping or knowingly letting any tenement for the purposes of prostitution, keeping a house of ill-fame resorted to for the purposes of prostitution or lewdness, or residing therein, are criminal offenses, and every person who lives in or about such houses, and any common prostitute, is a vagrant. (Pen. Code, secs. 315, 316, 647.) Ordinance No. 1587 of the board of supervisors of the city and county of San Francisco also makes it a public offense to maintain such houses, or become an inmate thereof or visitor thereto, or in any manner contribute to their support.

These laws have for their object the prohibition and suppression of prostitution, and that duty devolves, within the city and county of San Francisco, upon its police department. These houses are common or public nuisances. Their maintenance directly tends to corrupt and debase public morals, to promote vice, and to encourage dissolute and idle habits, and the suppression of nuisances of this character, and having this tendency, is one of the important duties of government. The suppression of such houses, as evidenced by the stringent laws concerning them, is the public policy of the state, and their abatement is to be accomplished by any reasonable and effective means which the government shall adopt, and

which does not involve a breach of the peace or the invasion of private rights.

It would appear, from the trend of the argument by counsel for respondent in this case, that there is a measure of seclusion about the premises where such houses are located, when they are off the main or public thoroughfare, which would preclude entrance upon them by the officers of the law. But this is not so. Houses of common prostitution are public places. They are places to which all men may resort without invitation, and any house maintained for the indulgence of vice, and to which all may resort day or night for indulgence therein, is a public place, and the approaches which are furnished, and which are generally used, in order to reach such places are public ways. These approaches, be they one or many, are public approaches to the extent that all who desire to visit these places must take them to enter the premises upon which they are situated. The fact that there may be a swinging door across the passageway does not make the approach the less a public one. It only tends to give an appearance of privacy to the premises, which, as far as the public is concerned, has no existence in fact, and to make the allurement to the vice within more effectual by the apparent seclusion of the premises within which it is practiced.

The area within which the thirty-three ''cribs'' in question are located is unquestionably a public place. These ''cribs'' face upon the inner court, which is a large area, and within that court there are main and lateral passageways affording public access to all of them, and the passageway thereto from Dupont Street, upon which plaintiff's restaurant faces, is the only entrance used by the public to approach these premises. It is the common and exclusive entrance.

And these premises being public the police officers had the same right to enter upon and traverse the passageways within the main court, and the entrance thereto, as had any other member of the public. In fact, in the enforcement of the law, which was being persistently violated through the existence of these houses of prostitution, these officers had the legal right to be there. It would be preposterous to say that where the public may freely enter to violate the law a police officer is excluded from entering to prevent it. He may patrol these passageways to deter by his presence the commission of crime

as he may patrol any other public thoroughfare, and while he does so peaceably and quietly, and in the discharge of his duty, no exception can be taken. He may remain there to make observations, and may make inquiries to obtain evidence; he may ask the names and addresses of those he finds there with that object in view, and if his presence has the effect of driving visitors away, or deterring them from coming, it has a proper and legitimate effect. So, too, he may warn those who are about to enter such places of their character and the provisions of the ordinance against visiting them. He can be there either for the purpose of enforcing the law by the apprehension of its violators and securing evidence to punish them, or to prevent infractions of the law by timely warning to those who are disposed to violate it. The maintenance of houses of this character is a continuous offense. They are public nuisances, as localities to which the public are invited to commit crime, and where it is constantly commited, save when the presence of an officer in the locality has a deterrent effect. No public place whose existence is devoted exclusively to vice can claim immunity from the peaceful presence of the officer upon its public passageways and approaches with a view of suppressing it. This right of surveillance upon the part of the officers as to the premises unquestionably devoted to prostitution applies not only to the premises themselves, but equally to the public approaches to them, and in the case at bar applied not only to the premises within the main court, but to the general passageway upon which the plaintiff's restaurant is situated, and which constitutes the public and only thoroughfare for communication between Dupont Street and these houses of ill-fame. The police had a right to be anywhere on these common public passageways and they violated no right of plaintiff in placing themselves near the entrance of Dupont Street, or in making the inquiries of persons about to enter thereon, of which plaintiff complains. Their action was aimed solely at these houses of prostitution. Their object was to procure evidence, and their inquiries in that direction were legitimate and proper, and if the presence of these officers and such inquiries had the further effect of deterring persons from entering the premises where these houses were situate, this was only a legitimate result. No effort was made to prevent

ary one from entering upon the public passageway. No intimidiation or coercion of any kind was attempted. All were at liberty to go in if they saw fit. In fact, the evidence shows that persons were going upon this passageway at all times, notwithstanding the presence of the officers and their inquiries. If any did not enter because they were accosted, it was a matter of their own volition. No one was prevented from entering the restaurant or cigar-store of plaintiff. His name or place was not mentioned. If the presence of the officers near the common entrance of these houses of ill-fame and the restaurant of plaintiff, and their inquiries of persons, deterred some of plaintiff's customary patrons from patronizing his business, it was but an incident following the unfortunate location of his business upon the public passageway. If he could complain because the officers were in front of the Dupont-Street entrance, he could equally complain that they were within the passageway on the other side of his restaurant entrance and near the main court, or at the direct point of entrance into the main court, or within the main court itself. The observation by his patrons of officers constantly at any of these points would probably affect some of them unduly sensitive to the presence of officers, or justly apprehensive of arrests to be made within the court, and unwillingly to be disturbed or annoyed by the excitement which might follow. If his loss of patronage followed under these circumstances, it could hardly be insisted by him that the officers must be prevented from remaining at these points.

But we are satisfied that he could not complain if there were officers at any point upon or near this public thoroughfare. If his business were not located there, no one else could complain. Certainly not the lessors or inmates or habitués of the premises, who then alone would be interested in maintaining this public passageway to the houses of ill-fame free from the presence of the officers. As evil resorts devoted exclusively to the persistent violation of the law, they could claim no immunity from interference by the police, whose duty it is to take all proper means to suppress them.

And the presence of plaintiff's business upon such public thoroughfare, particularly under the circumstances of this case, cannot be permitted to interfere with what must be

conceded to be the right of the officers to act as they did but for its presence. If a man sees fit to establish a business which would be otherwise legal within a general inclosure devoted to crime, and which relies in a large measure for its support from the maintenance upon such premises of houses of crime, he must suffer the consequences of his temerity. Particularly is this true when the main business conducted within these general premises is an unlawful business, and the business claimed to be lawfully conducted is but of small character, and appears to be incident to the main or illegal business, and dependent upon it for its support. And if one suffers the premises in his control to be used as a general passageway from a main thoroughfare to houses of prostitution within the general inclosure in which his business is established, or locates his business upon a passageway which is in general use as a means of entrance to his business, or to houses of prostitution situated within a common inclosure, he is, in the first instance, morally, if not legally, responsible as an encourager and promoter of crime, and in either event the location of his business upon such passageway does not entitle him to have a court hamper or restrain by injunction the action of the police authorities, peaceably taken, in their endeavor to suppress houses of ill-fame within such inclosure, and to which this passageway is the sole public entrance.

This is the situation and surroundings of the business of the plaintiff. He has voluntarily located his business upon a common public passageway, the sole means of travel to and from these houses of prostitution, the whole premises constituting one inclosure, the front entrance thereto consisting of the swinging doors. It was not necessary to have had the entrance to his business upon this passageway, except to bring the business exclusively within the general inclosure. He could have had an entrance upon Dupont Street, and one certainly more accessible to the public to whose patronage he claims he principally catered than as now situated, and which entrance would have relieved him from the injury to his business from the conduct of the officers of which he complains. This would have left the passageway devoted entirely to communication from Dupont Street with the houses of prostitution, against whose existence the efforts of the police were

solely directed, and of which efforts, then, no one could complain. The door, however, on Dupont Street, formerly used as an entrance to this part of the court where the restaurant is situated, had been closed up. Of course, it was matter of choice with plaintiff whether he should have the entrance to his restaurant in one place rather than the other; but having fixed it on the public passageway, he made this selection subject to the right of the officers to make the same use of it as the public. The passageway was, notwithstanding his choice, a public one. It remained the common entrance to houses of prostitution whose existence the police had a right to suppress, which they were taking lawful means to do, and the fact that plaintiff's business was located upon the common entrance to these houses did not affect the right of the officers to pursue upon this public passageway the course complained of.

The location of his business under the circumstances of this case could not protect this public passageway from entrance thereon by the police, or entitle these houses of prostitution to become inviolate from interference by the police officers, which would be the effect of the injunction granted by the lower court, if it were authorized. For the reasons given, we think it was not.

We have discussed this matter solely with relation to the issues made by the answer (and upon which the court failed to find) concerning the existence of these houses of prostitution, their situation, and the character of the passageway leading from Dupont Street to them, and the legal effect which would have to be given to findings thereon in favor of appellants, had they been made in their favor as the uncontradicted evidence in the case warranted they should have been.

And we have confined our consideration of the law solely to the rights of police officers, as exercised upon a common thoroughfare, or in public places, in an endeavor to suppress the existence of houses of prostitution.

This is all that is materially involved in this appeal. There are other points made, but from the views we have expressed they have now become either unimportant, or are disposed of by the conclusions we have reached.

The judgment and order are reversed.

ANGELLOTTI, J., concurring.—I concur in the judgment, for the reason that the injunction should have been denied upon the first ground suggested in the opinion,—viz., that there can be no doubt under the evidence that the sole object of the application for an injunction in this proceeding was the protection of the houses of prostitution maintained in violation of the laws of the state, and that plaintiff's claim that his cigar and restaurant business, established and maintained by him within the gates of a place otherwise devoted wholly to the open and notorious carrying on of an unlawful occupation, is being injured by the acts of the police, is a mere pretense in furtherance of the object of protecting such unlawful occupation against the officers of the law, a pretense with no other foundation in fact than that his business will be injured by the suppression of the places maintained in violation of law. Under such circumstances he can have no standing in a court of equity. It would not be claimed that the keepers or inmates of these houses of prostitution could obtain an injunction restraining the doing of acts designed to impede them in accomplishing violations of the penal laws of this state. It needs no citation of authorities to substantiate the elementary proposition that equity will not stretch forth a helping hand for the purpose of aiding one in committing a crime. The plaintiff here stands in no better position than would the keepers and inmates of these houses. He is simply their representative. While avowedly seeking to protect himself in the carrying on of a lawful business, he is in reality simply asking a court of equity to prevent the suppression of places maintained in violation of law. That his business will be injured by the suppression of these places is of course no ground of complaint of which a court of equity will take cognizance. It would hardly be claimed that one is entitled to have criminal conduct continued in order that he may profit thereby.

Henshaw, J., concurred with Angellotti, J.

BEATTY, C. J., concurring.—I concur in the judgment upon the grounds stated in the opinion of Justice Lorigan, and also upon the ground stated in the opinion of Justice Angellotti.

Shaw, J., and Van Dyke, J., concurred with Beatty, C. J.

McFARLAND, J., concurring.—I concur in the judgment of reversal, but not in all that is said in the leading opinion. I particularly think that the opinion sanctions too much power in policemen to stop people indiscriminately on a public street and demand their names. And I also think that other expressions in the opinion upon other questions arising in the case are perhaps not sufficiently guarded. I concur in the judgment on the ground stated in the opinion of Mr. Justice Angellotti, which is in substance that under the peculiar facts clearly shown in this case respondent stands upon the same footing as the occupants of the places of prostitution which are substantially a part of the same premises and within the same inclosure. It will not be contended that the persons there carrying on prostitution could successfully invoke the aid of a court of equity for the remedy here asked by respondent; and, under the facts here appearing, respondent has no greater right than the prostitutes to invoke that remedy. This case is very different from that of a person carrying on a legitimate business in the immediate vicinity of a house of prostitution, but occupying premises entirely different and separate from the former place.