## CASSADY v. CAVENOR.

**Nuisance :** ABATEMENT OF. One cannot successfully claim that a structure standing on his neighbor's premises is a nuisance, and procure an abatement of the same, when he maintains one equally offensive on his own premises.

*Appeal from Madison District Court.*

TUESDAY, OCTOBER 21.

ACTION in equity for the abatement of the defendant's stable, hog-pen, privy and sewer, as nuisances.

The defendant denies the allegations of the petition, and by way of counter-claim asks the abatement of hog-pens, stable, stable yard and privy maintained by plaintiff.

Trial by the court by the first method.

The petition and counter-claim were both dismissed, and judgment was rendered for the defendant for costs. Plaintiff appeals.

The facts are stated in the opinion.

*Jno. Leonard* for the appellant.

*Wainwright & Gilpin* for the appellee.

DAY, J. — Both the plaintiff's and the defendant's premises are situated in block ten in the original plat of the town of Winterset. This block is composed of eight lots, each one hundred and thirty-two feet long from north to south, and sixty-six feet wide from east to west, and four of them lie to the north, and four to the south of an alley, sixteen and one-half feet wide, running east and west. The size of the block is, therefore, two hundred and sixty-four feet by two hundred and eighty and one-half feet.

The plaintiff's residence was built in 1849, upon the south half of lots one and two, and stands eleven feet north of the alley.

The defendant's house, which is a hotel, was built in 1855, and stands on lot eight, which is directly south of lot one, across the alley. Plaintiff purchased his premises in 1865, and has resided there ever since. The defendant came in possession of the hotel in 1869. On the north-east corner of lot eight, next to the alley, and twenty-seven and one-half feet south of plaintiff's house, is situated defendant's stable. Just west of the stable, and near the alley, his privy formerly stood, but before the commencement of the suit this was removed south of the stable, about midway between defendant's hotel and the north line of the lot.

Upon the north end of the middle third of lot seven, next to the alley, and sixty-two feet southwest of plaintiff's dining room window is situated defendant's hog-pen.

Leading from defendant's well, crossing lot eight near the center, extending under the sidewalk, and running thence north along the sidewalk past plaintiff's premises, is a sewer constructed by defendant. When plaintiff purchased the premises the stable was erected, the vault for the privy was dug, and a hog-pen stood a little west of where defendant's pen now stands, and instead of the sewer a drain extended

along the sidewalk past the premises. Upon the block in question, besides the buildings of defendant, there are four privies, three stables, three hog-pens and a hen-house, the plaintiff being the proprietor of a privy, hen-house, two hog-pens and a stable upon the south half of lot two.

The plaintiff's privy is thirty-five feet and his stable sixty-one feet directly west of his dining-room window. The hen-house stands just south of the stable. One of his hog-pens stands in the northwest corner, and the other in the southwest corner of the south half of lot two, the one being about seventy feet northwest, and the other about the same distance. southwest of his dining-room.

Plaintiff complains that the defendant's hog-pen, old privy vault, stable and sewer emit, noxious exhalations and offensive odors, destructive of the health and comfort of himself and family, and he asks that they may be declared nuisances and as such abated. It is .impracticable, and, if practicable, it .would be unprofitable to review in detail all the evidence submitted. It occupies sixty pages of the printed abstract, and is very conflicting. Notwithstanding this conflict, there are some prominent facts, well established, which will enable us without difficulty, to reach a conclusion. In the first place, although much testimony has been taken respecting the condition of the existing privy, the complaint is, not of annoyance from that, but from the vault of the old privy. And, in the second place, the evidence very satisfactorily shows that the interior of both the hog-pen and stable is kept in a very cleanly condition.

Whatever annoyance the plaintiff suffers, therefore, arises not from the condition of these buildings in themselves, but from the condition of the alley, from the excrement accumulating therein from the hog pen, the old privy vault, and the stable. We will get a clearer view of the case by considering the various subjects of complaint separately. The hog pen principally offends the plaintiff's olfactories, and we will first consider the facts respecting it., It is situated southwest of the plaintiff's dining-room, and when the wind is from that

direction, it is claimed the odors are very offensive, sometimes necessitating the closing of the windows and door. This hog-pen is cleaned out almost every day, and the hogs are washed, when they become dirty, as the evidence shows, and the excrement, which is thrown into the alley, is removed about once a week. There is no doubt, from the evidence, that this accumulation sometimes, and especially during the summer of 1869, which was unusually wet, was quite offensive. Yet the plaintiff's hog pen stood just across the alley sixteen and one-half feet north and a little west of defendant's, and the evidence shows that it furnishes no small amount of filth, and contributes in no small degree to the condition of the alley at that place. One witness, Gaskill, testified respecting it as follows: " After the difficulty between the parties, I was going through the alley, and noticed its condition. I thought the most of the filth was on the plaintiff's side of the alley. This was in the summer of 1870 or 1871."

There is much in the testimony tending in the same direction. The plaintiff cannot well insist that the hog-pen is *per se* a nuisance, while he maintains one himself almost in the same place, nor can he very well complain of that which he helps to create and continue.

Besides there is much to show that in the fall of 1869 the alley was placed in reasonably good condition. Plaintiff himself impliedly admits that the bad condition did not continue until the time of trial. His deposition was taken in November, 1871, and in that he says, " until the latter part of last summer defendant kept the alley in a very bad condition."

The old privy was moved during the summer or fall of 1870, and the vault was filled with manure and rubbish. From the very great conflict of the evidence respecting its subsequent condition it seems most probable that, for a time after the removal, the excrement oozed from the vault into the alley, and it seems pretty clear that this condition had ceased at the time of the trial. This vault is situated directly south of plaintiff's house, there are no windows in the south side of the house, and as the principal annoyance was felt in the

dining room, which has openings only on the west, and when the wind was from the southwest, it is reasonably certain that the inconvenience did not arise from this vault. And this certainty is increased by the fact that at the southwest corner of plaintiff's house, and extending from near the corner of the house westward, stands a shed-room for storing boxes, barrels, etc., and which, from its location, must intercept the wind from the vault.

The evidence shows that the stable is kept clean, and that the manure from it is hauled away with reasonable frequency. The location of the manure deposit is such that a southwest wind from it could not reach plaintiff's dining-room, nor his house.

The sewer is composed of boards ten or twelve inches wide, nailed together and placed in the ground in the form of an inverted v. It was constructed under the direction of the city marshal.

It is used to carry away the waste water from the well, and the wash water. The slops are fed to the hogs. The ground is so level that the water does not readily flow off, and in places it breaks through the sewer.

At the end of the sewer the water empties into a ditch, and here the hogs, by wallowing, have made a mud hole four or five feet wide, and ten or fifteen feet long. The evidence satisfies us that the offensiveness of the sewer arises from this mud hole, which is about thirty feet from plaintiff's residence.

There is an ordinance of the town prohibiting hogs from running at large, and an enforcement of this ordinance would, we think, render the sewer inoffensive.

There are some considerations of a general nature which may be noticed The defendant's buildings are situated where they should be, near the alley. The plaintiff's house is not where it should have been. It stands upon the back of the lot eleven feet from the alley, instead of upon the front of the lot, which is one hundred and thirty-two feet from the alley. The stable stood where it now is, the hog-pen was nearly in the same place, and the vault for the privy was dug, when plaintiff pur-

chased the premises. From 1865 until 1869 the premises were kept in not nearly so good a condition as since the defendant has occupied them, yet during that time no complaint was made, and the plaintiff testifies that he rarely noticed any disagreeable odor.

The plaintiff himself is not a model of neatness or cleanliness. When the city marshal, at the request of plaintiff, went to notify defendant that he must clean up his hog-pen and stable, he saw plaintiff's hogs in his own barnyard, just across the alley, "in manure up to their knees."

Gideon McKibben, speaking of plaintiff's premises, says: "He had some hogs penned up in the northwest corner of his lot, and it was very nasty there for some time." And Joseph Hunt says, "I have seen plaintiff's yard kept very dirty." If one coming into a court of equity for relief must do so with clean hands, it is not unreasonable that he should not be allowed to abate his neighbor's premises, because of their uncleanness, when it appears that his own are equally filthy. *Carter* v. *Winslow*, 38 Vermont, 691.

After a careful review of the entire evidence, we are satisfied with the judgment of the district court.

Affirmed.