## THE STATE v. PRIZER.

1. **Criminal Law: SEDUCTION: REPUTATION.** The term "character," as employed in section 3867 of the Code, refers to moral qualities, and not to reputation; and evidence of reputation, in a suit for seduction, is not admissible upon the issue involving the woman's character, but only to discredit or support testimony tending to establish particular acts of lewdness.

2. ———: ———: **PROMISES.** An instruction directing the jury that if the defendant accomplished his purpose by "promises" he was guilty of seduction, was *held* not erroneous, in view of the fact that he subsequently rendered the promise false by breaking it.

*Appeal from Washington District Court.*

TUESDAY, DECEMBER 3.

THE defendant was convicted of the seduction of an unmarried woman of previously chaste character, and sentenced to imprisonment in the penitentiary for the term of one year. He now appeals to this court. The facts of the case are stated in the opinion.

*A. H. Patterson & Son* and *R. S. Mills*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

BECK, J.—The objections urged against the proceedings and judgment in this case will be considered in the order of their discussion pursued by the counsel for the defendant.

I. Two witnesses for the defendant were asked by his counsel to testify—the one as to the woman's moral character, the other in regard to her character for chastity. It is obvious, upon a consideration of all the language of the questions, as well as of the sense of the word in its colloquial use, that the term *character*, as used, expresses the idea conveyed by the word *reputation*. There can be no doubt that the exact thought of the questions related

to the reputation of the woman for good morals and chastity, and that it was so understood by the court and counsel. Another witness for defendant was interrogated as to the woman's reputation generally. The questions were propounded in the examinations in chief, and the court, upon objections by the district attorney, refused to permit the witnesses to make answer thereto.

The statute under which defendant was convicted prescribes punishment for seducing and debauching "any unmarried woman of previously chaste character." The word *character*, as here used, refers not to her *reputation*, but to her real moral qualities. The language of a prior decision of this court aptly expresses the true meaning of the word, viz.: "We think the statute intended to use the term 'character,' in its accurate sense, and as signifying that which the person really is, in distinction from that which she may be reported to be." *Andre v. The State*, 5 Iowa, 389 (394).

The crime of seduction is committed when a really chaste woman is induced, by means which may overcome the virtuous, to submit to the embraces of her tempter. To determine whether the crime has been committed the true character of the woman must be ascertained; it must be known whether she be really chaste or otherwise. The reputation of a man or woman does not always accord with the true character of the individual. The good and pure are often traduced by bad men and women, and suffer in reputation by reports invented and circulated through motives having their origin in enmity, malevolence and hate. The reputation of women for chastity is especially exposed to such assaults. A scandal, having its origin in falsehood or imagination, has no limit to its circulation, and the unfortunate subject of the slander will usually hear no voice from her own sex lifted up in her defense. A direct and confidently asserted charge of impurity is usually accepted by womankind as evidence of want of virtue, and often the poor suffering victim of slander is driven from society by the good and pure of her own sex without evi-

dence of her guilt.  This sad truth is familiar to all.  It is strange, indeed, that the heart of woman, so tender toward the afflicted, so full of charity, so forgiving, and always prompting to deeds of kindness, should be closed to the victims of slander among her own sex.  It may be that the inexorable laws of society, which banish the slandered woman, tend to protect and preserve virtue by presenting the most powerful motives for its practice, while they often inflict the most cruel injustice.  ·The law, however, can recognize no such rules. It will aim, in each case, to administer justice, and will protect virtue against the assaults of the slanderer, though the victim be a woman.  It will not permit the lewd and vicious, by falsehoods, to destroy the reputation of a woman and then to seek protection against the penalties it provides for the overthrow of her virtue under the slanders their malevolence created.  But this result would be reached should the rule advocated by defendant's counsel be followed in cases of this kind.  It cannot be recognized by the courts.

Counsel for defendant rely upon *The State v. Shean*, 32 Iowa, 88, to support their position in this branch of the case. We there held that upon the trial of an indictment for seduction, where acts of lewdness had been testified to by witnesses for the prisoner, the good reputation of the prosecutrix for virtue may be shown in rebuttal.  The decision is based upon the ground that a reputation for virtue, gained by a life of purity, renders, in a degree, charges of lewdness of sexual indulgence improbable, and may, therefore, be given in rebuttal of evidence supporting such charges.  Evidence of a reputation for chastity, based upon a life of purity, surely ought to be a protection of some degree of strength against specific charges of lewdness; but it cannot be said that reputation for unchastity establishes the character to be impure. Such a character may be established by proof of particular acts, or by a course of life and conduct inconsistent with purity.  A pure character may not be shown by reputation, but evidence of particular lewd conduct may be rebutted by

proof of a good reputation. It will be observed that in no case can reputation be given in evidence to establish the chastity or the impurity of the woman. A good reputation being shown by the prosecutrix in rebuttal of specific charges of lewdnes, the State, of course, may introduce evidence upon that issue, and assail the woman's reputation in contradiction of the evidence she has offered upon that point. It will thus be seen that evidence of reputation is not admissible upon the issue involving the woman's character, but only to discredit or support testimony tending to establish particular acts of lewdness. See *Kenyon v. The People*, 26 N. Y., 203; *The People v. Kenyon*, 5 Parker, 286; *Bakemon v. Rose*, 18 Wend., 146.

The position of defendant's counsel upon this point is supported by 2 Wharton's Criminal Law (7th Ed.), § 2672. The learned author cites, in support of the doctrine of the text, *The State v. Shean, supra*. The citation of this case is clearly made under a misapprehension of the point decided, which we have endeavored to correctly state in the foregoing discussion.

II. The defendant sought to prove by one of his witnesses the contents of a letter sent by the prosecutrix to the defendant. The evidence was correctly excluded, if for no other reason, on the ground that it was not shown the letter itself could not have been produced in evidence by the defendant.

III. Counsel urge several objections to the instructions given by the court to the jury, and modifications of instruc-

2. ——: ——: tions asked on behalf of the defendant. These
promises.    objections are really rather criticisms upon the language of the instructions than assaults upon the doctrines they announce. We have given the whole charge of the court a very careful consideration, and detect no error in it. The several objections raised by defendant need not be discussed. Two or three may be here mentioned as fair specimens of all. The jury were informed that if defendant obtained the consent of the prosecutrix to submit to his

desires through arts, *promises* or deception, he is guilty of seduction. Counsel insist that the noun "promises," in the instruction, should have been modified by the adjective "false." A promise made with an intention at the time to break it may be called *false*. If defendant's promise was not false in that sense, he would, nevertheless, be guilty if he subsequently broke his promise. The promise of marriage was referred to in the instruction.

The court, in directing the jury upon the subject of corroboration, enumerates two of the circumstances or facts which may be considered as supporting the testimony of the prosecutrix, and informs them that she may be corroborated by such facts, if found, "or in any other way that satisfies the mind" of defendant's guilt. It is insisted that this instruction should have been so modified as to express the thought that the mind should be satisfied beyond a reasonable doubt; but that thought was clearly expressed in another paragraph of the instructions. It was not necessary to repeat the language expressing it.

Counsel also insist that there were no other circumstances disclosed by the testimony corroborating the prosecutrix than those enumerated in the instructions. The record does not support this statement of counsel.

The other objections to the instructions are wholly based upon an erroneous interpretation of their language.

IV. It is insisted that the evidence fails to support the conviction, and especially that the prosecuting witness was not sufficiently corroborated. We have given the testimony careful and patient consideration, and are of the opinion that the verdict may well have been the result of an intelligent and honest exercise of discretion upon the part of the jury. We cannot, therefore, disturb the judgment.

V. It is lastly urged that the punishment is excessive, and that the ends of justice will be attained by reducing it to a term of imprisonment in the county jail. The youth of the defendant, his respectable family connections, and the fact

that the prosecutrix before the trial married another man, are urged as grounds for mitigating the punishment. While defendant was barely past his majority when he perpetrated the crime, the unfortunate woman was much younger. The respectability of his family rather aggravates his offense, as it appears he was not without instruction and example in virtue. The woman's subsequent marriage to another does not diminish the character of his offense.

The frequency of this crime, whereby so many young women are ruined for life, and the peace of families is destroyed, requires the administration of such punishment that libertines, old and young, may be deterred in their wicked designs and efforts to destroy the virtue of unsuspecting women. They should understand that while this crime ruins their victims, it subjects them to ignominious punishment and banishment from society.

AFFIRMED.