MODERN HORSE SHOE CLUB v. A. C. STEWART et al., Appellants.

Division Two, May 9, 1912.

1. INJUNCTION: To Protect Violation of Law: Hygienic Club. A plaintiff is not entitled to an injunction to protect him in the continued violation of law. A club, organized as a corporation under the statutes relating to fraternal and benevolent organizations, is not entitled to an injunction against the police, to protect it in selling liquor in violation of law; and although the police continually raid its place of business and arrest its

members as vagrants, that does not entitle the club to an injunction to put a stop to such raids and arrests where the real purpose of the suit is to enable the club to illegally sell liquors. Although the police are not justified in resorting to illegal means to break up an illegal business, an illegal business cannot invoke the aid of a court of equity to continue its existence.

2. ————: ————: When Equity Interferes. To maintain a suit in equity plaintiff must show himself to be in the exercise of legal rights which will be destroyed without the intervention of a court of equity. It is not the province of equity to assist a wrongdoer in the violation of law; and even though the police, in their attempts to put an end to a disorderly and illegal business, may use oppressive measures and may even become tres-passers, yet a court of equity will not, under a prayer to restrain those oppressive acts, do so for the sole purpose of enabling plaintiff to continue the disorders and illegal business. A plaintiff must come into a court of equity with clean hands.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED.

*Charles Bates, C. P. Williams, Lambert E. Walther* and *Robert Burkham* for appellant.

(1) The respondent is not legally entitled to engage in the sale of intoxicating liquors, and its officers, members or agents in doing so are guilty of the continuous commission of criminal acts. State ex rel. v. Club, 125 Mo. 308; State v. Tindall, 40 Mo. App. 271; Black, "Intoxicating Liquors," secs. 142, 528; Woolen and Thornton "The Law of Intoxicating Liquors," sec. 798. (2) It is not only the right but it is the duty of police officers to make arrests whenever they have reasonable grounds to believe an offense has been committed. State v. Underwood, 75 Mo. 230; State v. Grant, 76 Mo. 236; R. S. 1909, sec. 9805; State v. Hancock, 73 Mo. App. 19; Wehmeyer v. Mulvihill, 150 Mo. App. 197; State v. Boyd, 108 Mo. App. 518; State v. Flynn, 119 Mo. App. 712; R. S. 1909, sec. 4748; R. S. 1909, sec. 4749; State v. Albright, 144 Mo. 638;

Boeger v. Langenberg, 97 Mo. 390; Weiss v. Herlihy, 23 App. Div. (N. Y.) 608. (3) A court of equity will not interfere by injunction to restrain or control the exercise of discretion by police authorities in the. prevention of crime and in the maintenance of peace, and a decree having this effect is violative of article 3 of the Constitution. 2 Bouvier, Law Dict., p. 691; Black's Law Dict., p. 909; Freund on Police Powers, sec. 86; Weiss v. Herlihy, 23 App. Div. (N. Y.) 608; R. S. 1909, sec. 9805; 22 Cyc. 879, 889; 3 Abbott on Municipal Corporations, secs. 1130, 1137; Spelling on Injunctions, secs. 628, 691; Kerr on Injunctions, p. 4; High on Injunctions (4 Ed.), sec. 1326; Gaines v. Thompson, 74 U. S. 352; Decker v. Diemer, 229 Mo. 296; State ex rel. Wear v. Francis, 95 Mo. 44; Federalist Papers, No. 47; State ex inf. v. Sheppard, 177 Mo. 205; Albright v. Fisher, 164 Mo. 56. (4) Respondent does not come into equity with clean hands and should therefore be denied relief. 1 Pomeroy "Equity Jurisprudence," secs. 397, 398; Pipe Co. v. Reservoir Co., 111 Fed. 284; Bein v. Heath, 6 How. (U. S.) 288; Creamer v. Bivert, 214 Mo. 473; Houtz v. Hellman, 228 Mo. 655; Little v. Cunningham, 116 Mo. App. 545; Rose v. Smith, 167 Mo. 81; Woolen and Thornton, "The Law of Intoxicating Liquors," sec. 748; Comm. v. Tierney, 148 Pa. St. 552; Comm. v. Enig, 145 Mass. 119; State v. Tindall, 40 Mo. App. 271; Morrison v. Juden, 145 Mo. 283; Medicine Co. v. Wood, 108 U. S. 218; Journal Co. v. Pub. Co., 127 Mo. App. 356; Railroad v. Crothersville, 159 Ind. 330; Beck v. Stock Co., 65 Fed. 30; Danciger v. Stone, 187 Fed. 853; Pons v. Whitman, 147 Cal. 280; Weiss v. Herlihy, 23 App. Div. (N. Y.) 608. (5) Equity has no jurisdiction in criminal matters and will neither enjoin the commission of a crime nor an arrest therefor, nor will equity even inquire whether a crime has been committed. State ex rel. v. Lamb, 142 Mo. 398; R. S. 1909, sec. 4411; R. S. 1909, sec. 4420; Davis v. Society, 75 N. Y. 368; Ster-

man v. Kennedy, 15 Abb. Pr. (N. Y.) 201; Kramer v. Police, 53 N. Y. Sup. Ct. 492; Campbell v. York, 30 Misc. 340; Delaney v. Flood, 183 N. Y. 323; Stevens v. McAdoo, 112 N. Y. App. Div. 458; Shepard v. Bingham, 125 N. Y. App. Div. 784; Club v. Speer, 29 Colo. 158; Adams v. Oyster Co., 34 Colo. 219; Chicago v. Wright, 69 Ill. 318; Moses v. Mayor, 52 Ala. 208; Caille Co. v. Haager, 50 S. W. (Ky.) 244. (6) Respondent has -an adequate remedy at law. Sullivan v. Gas Co., 148 Cal. 368; Fincke v. Police, 66 How. Pr. (N. Y.) 318; Kenny v. Martin, 11 Misc. (N. Y.) 651; Suesskind v. Bingham, 125 N. Y. App. Div. 787; Moore v. Owen, 109 N. Y. Supp. 585; Sterman v. Kennedy, 15 Abb. Pr. (N. Y.) 201; Delaney v. Flood, 183 N. Y. 323.

*T. J. Rowe* and *Hiram N. Moore* for respondent.

FERRISS, P. J.—Bill for injunction filed in the circuit court of the city of St. Louis in November, 1907, by the Modern Horse Shoe Club, a corporation organized under the statutes relating to fraternal and benevolent organizations, and against the members of the board of police commissioners of the city of St. Louis, the chief of police, and one Gaffney, captain of police, commanding in the eighth police district of said city.

The bill alleges that the plaintiff is authorized to maintain and does maintain on the premises, number 2309 Chestnut street, in said city, a club house, consisting of twelve rooms, with furniture, fixtures and appurtenances; that the membership of the club is limited to male negro citizens of said city of good moral character, who believe in the teachings and principles of good government, and that its members are and were at all times so qualified; that each member paid an initiation fee of one dollar, and dues of one dollar every three months; that the expense of maintaining the club is derived from the fees and dues aforesaid,

and from the distribution of food and drink furnished
to its members; that in order to maintain itself and
pay its expenses and indebtedness it is necessary that
plaintiff should be enabled to furnish its members with
club accommodations and facilities, and dispose of its
supplies on hand to its members; that on several oc-
casions the defendants raided and caused to be raided
the club house and premises, and wrongfully and wan-
tonly, and without process of law, arrested and caused
to be arrested members of said club under the false
charge of vagrancy; that said defendants have threat-
ened and are now threatening to arrest each and every
one of plaintiff's members found in said club house,
and prosecute them under the false charge of idling;
that by so doing they have terrorized the members of
the club and prevented them from using and enjoy-
ing the club and its facilities; that the defendants have
caused, and are now causing daily, the police officers
of the city to visit the premises of the club, without
any reason therefor, and for the only purpose of ter-
rorizing the members of said club and disrupting said
organization; that defendants are threatening to con-
tinue said illegal raids and unlawful arrests so long
as plaintiff operates its club house, and have ordered
the officers of plaintiff to close its said club house
under threat of arrest and prosecution. Plaintiff fur-
ther alleges that its organization was made in good
faith; that it maintains its club house in good faith,
that at no time has anything unlawful or improper
occurred therein; that its members are not vagrants,
but law-abiding, industrious and hard-working men,
and that they only enjoy, and will be permitted to en-
joy, such privileges as plaintiff is authorized to fur-
nish them by the terms of its charter, and that plaintiff
has at no time exceeded its rights under its charter;
that if defendants are permitted to carry their said
illegal threats into effect, the result will be irrepar-
able damage to plaintiff, and will deprive plaintiff's

members of the rights and privileges to which membership in plaintiff's organization entitles them, and in the enjoyment of which they have a right to be protected by law.

Wherefore plaintiff prays a perpetual injunction against the defendants, restraining them from in any way molesting or interfering with plaintiff's members, officers or agents in or about said club, because of their being there, or on any false and pretended charge of vagrancy.

On the filing of this petition a temporary injunction was issued as prayed for.

The answer of the defendants denies each and every allegation in the petition, and for further answer alleges that plaintiff is not the real party in interest; that the plaintiff does not come into a court of equity with clean hands; that the pretended plaintiff corporation was not and has not been, up to the filing of this suit, conducted as a benevolent, religious, scientific, fraternal-beneficial, or educational institution or corporation, but for the purpose of evading the statutes of the State and the ordinances of the city of St. Louis relating to dramshops and the sale of intoxicating liquors; that the said pretended club was constantly being conducted for the aforeasid unlawful ends, up to the time of the filing of this suit; that said club has frequently been resorted to by, and has been the common lounging place and rendezvous of ex-convicts, thieves, vicious and dissolute women and other criminal characters of the negro race, and that the said pretended club is controlled and operated for purposes of private, pecuniary gain by one Ollie Jackson, with the aid and assistance of persons to defendants unknown, and was organized by him shortly after his release from serving a term in the State penitentiary; that prior to and up to the filing of plaintiff's petition, said premises were the nightly scene of gambling, disturbances of the peace, and violations

of the laws of the State relating to the sale of liquor, and was not a *bona fide* club, conducted for the sole use and benefit of its members, and that said pretended club has, since the date of its organization, been what is popularly known as a lid-lifting club, and ought not to be protected by the court.

To this answer plaintiff filed a general denial.

The cause was heard at great length upon the facts, at the conclusion of which the court rendered a decree dismissing the bill as to all the defendants except Gaffney, and perpetually enjoining defendant Gaffney, his successors in office and subordinates, and the officers and men of the police force under them, from raiding or arresting, or in any way molesting or interfering with, plaintiff's members, its officers, agents, employees or servants, while in or about plaintiff's club house and premises, solely because of their being there, or from arresting on the premises of plaintiff said members on any false or pretended charge of vagrancy. Defendant appeals.

The evidence substantially sustains the allegations of the answer, and shows that the corporate form was used as a cloak under which the so-called club engaged in the sale of liquor in violation of law. Practically the only activities conducted in the club consisted in the selling of liquor and card playing. Liquor was sold over a counter in a room fitted up like an ordinary barroom, and was sold for cash at the same prices charged in licensed saloons. Such sales were conducted on every day of the week, including Sunday, and all night long. The evidence, on the other hand, shows that the police, acting under instructions from defendant Gaffney, attempted to break up this club by repeated raids and arrests made for that avowed purpose; that members were arrested as vagrants, and the charges subsequently dismissed; that such arrests were made not for the purpose of prosecution on charges of vagrancy, but for the sole

purpose of breaking up the club. It further appears that the police entered the premises peaceably, quietly and without opposition, and that no injury was done or threatened to the physical property of the club.

The learned chancellor who tried the case below indicated very clearly in his opinion that he regarded the testimony sufficient to forfeit plaintiff's charter in a proper proceeding for that purpose, but condemned in vigorous language, as illegal, the methods instituted by the police to break up this establishment, and suggested that the proper method is by a proceeding in *quo warranto*. He held, properly, that in the city of St. Louis the police may, without a warrant, make an arrest upon a well grounded suspicion that a crime, either felony or misdemeanor, has been committed. He was, however, of the opinion that repeated raids and arrests, upon charges of vagrancy, which were made for the avowed purpose of breaking up the club, and not for bona fide prosecution, were continuing trespasses which equity should enjoin, even conceding the truth of the allegations of the answer.

Without criticising the conclusions reached below as to the rights and duties of the police, and the character of their acts complained of, we are of the opinion that the chancellor did not give sufficient consideration to the question preliminary to all others i. e., does the plaintiff show that its own conduct has been such as to justify it in asking relief in equity? In other words, does plaintiff come before the court with clean hands regarding the matter in controversy? This is not a proceeding instituted in behalf of individual members of the club who claim to have suffered from illegal arrests made by the police. The plaintiff invokes the aid of the court of equity to protest it in the exercise of rights which had been granted it by law. Such is the distinct claim of the bill. The court is not asked to punish the police officers for op-

pression in office, nor to mulct them in damages for injuries to the rights of plaintiff or its members. Its aid is invoked to protect plaintiff's right to exercise its functions as a club under the authority of its charter.

The first question to be considered is, whether such right of plaintiff is involved in this controversy. In this matter we must be governed, not by the allegations of the bill as to the rights of plaintiff under its charter, but by the proof as to what rights in point of fact are threatened with destruction by the action of the police. The only "right" which plaintiff has exercised and desires to continue to exercise is the right to sell liquor in violation of law. If the efforts of the police are successful and result in breaking up the establishment, this is, according to the evidence, the only substantial privilege that will be affected. Therefore, this suit in effect asks the court to protect plaintiff in its continued violation of law. The very statement of this proposition suggests the answer. The necessary effect of this injunction is to permit the plaintiff to continue to sell liquor without a license, and otherwise violate the law. We do not mean to say that the police are justified in resorting to illegal means to break up an illegal business, but we do mean to say that an illegal business cannot invoke the aid of a court of equity to continue its existence. If the police have adopted a high handed and even illegal method of procedure, the law affords a remedy, either by prosecution for the crime of oppression in office or by suit for damages. If the legal rights of a plaintiff are invaded, and there is no adequate relief at law, a court of equity will protect such rights by injunction, even if such protection require it to enjoin acts criminal in character. The primary question is not whether defendant has committed crime, or whether he is a trespasser. The first pertinent inquiry is, whether plaintiff has shown itself to be in

the exercise of legal rights which will be destroyed without the intervention of a court of equity. If this inquiry is answered in the negative, the relief should be denied. The plaintiff in preparing its bill, very properly realized that it must show that the rights for which it was seeking protection were within the law. It therefore alleges that its organization was made in good faith; that nothing unlawful or improper had occurred, or would occur, within its club rooms; that its members were law-abiding, industrious, hard-working men, and that they enjoyed, and would be permitted to enjoy, only such privileges as plaintiff was authorized to furnish by the terms of its charter, and that plaintiff has at no time exceeded its rights under its charter.

And what is the threatened injury? Here is the allegation in the bill on this point; "The result will be irreparable damage to plaintiff, and will deprive plaintiff's members of the rights and privileges to which membership in plaintiff's organization entitles them, and in the enjoyment of which *they have a right to be protected by law.*"

The bill clearly demands protection for such rights only as are granted plaintiff by its charter. The case breaks on this point. The evidence not only does not sustain these allegations of the bill, but shows clearly, and without substantial dispute, that the so-called rights now sought to be protected are simply violations of law.

In the case of Weiss v. Herlihy, 23 App. Div. (N. Y.) 608, under facts quite similar to those in this case, the court uses this language, which we consider entirely proper here: "This plaintiff, according to the testimony made to appear upon this record, is persistently and flagrantly using these premises for a disorderly house in violation of the statute. He asks the help of the equitable power of the court practically for the purpose of permitting him to continue that

violation of law.  It is apparent that an injunction could have no other effect, and that just as soon as the observation and inspection of the police was withdrawn from this place, this gambling house would be reopened, to the scandal and inconvenience of the neighborhood.  A court of equity will not permit its process to be perverted to any such purpose.  Assume that the legal rights of this plaintiff are being infringed.  If that be true, he must enforce them by the proper proceedings at law, and if he can do so, undoubtedly his rights will be protected or he will be recompensed for any violation of them; but if the law affords him no protection, equity will certainly not help him by putting its hand upon the officers of the law who are seeking to perform their duty—although possibly in a manner oppressive to this plaintiff— and restraining them for no other purpose than that this man may go on with his violations of the law unmolested and unwhipped of justice."

To the same general effect are Beck v. Flournoy Live-Stock Co., 65 Fed. 30; Pon v. Wittman, 147 Cal. 280; Pittsburg Ry. Co. v. Town of Crothersville, 159 Ind. 330.

What we say in this opinion cannot be construed as a justification of illegal methods, if any, adopted by the police.  As a court of equity, we refuse relief to plaintiff, not because some of its members are bad men; not because its manager and practical owner is an ex-convict; not merely because the evidence shows good grounds to forfeit its charter; not because we justify the actions of the police; but because the plaintiff does not come into court with clean hands concerning the very subject-matter of this controversy, namely, its legal rights under its charter, and because it is not the province of equity to assist a wrongdoer in violating the law.

The judgment is reversed and the bill dismissed. *Kennish* and *Brown, JJ.,* concur.