F. H. DIETZ, Appellee, v. JAMES CAVENDER, Chief of Police, et al., Appellants.

**INJUNCTION:** Subjects of Relief—Search Without Warrant. One who is shown to be a violator of the law relative to the sale and possession of intoxicating liquors will be accorded no standing in a court of equity in an action by him to enjoin peace officers from picketing his place of business, interfering with his business, or searching his customers without a search warrant.

Headnote 1:   21 C. J. p. 186.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

APRIL 9, 1926.

Petition in equity, to restrain James Cavender, the chief of police, and John Jenney, councilman and the head of the public safety department, and the city of Des Moines from obtaining search warrants, searching customers, picketing plaintiff's premises, etc. A temporary injunction was allowed, and the defendants appeal.—*Reversed.*

*John J. Halloran, Reson S. Jones, Chauncey A. Weaver,* and *Paul Hewitt,* for appellants.

*Chester J. Eller,* for appellee.

MORLING, J.—The petition alleges that plaintiff is conducting a drug store; that his business has been searched by the police eight or ten times within the year, without discovering intoxicating liquors; that the defendant councilman and the chief of police are engaged in malicious trespasses in directing police officers to go upon plaintiff's premises without search warrants

and in searching patrons and picketing the premises; that none of the officers have discovered any misconduct of any kind; and that plaintiff is conducting a legitimate business. An amendment alleges that various search warrants were obtained under the orders of the defendant chief and councilman, and searches made without grounds, and illegally. The relief prayed is injunction. Ten informations against the plaintiff or his firm and premises between February 25, 1924, and March 19, 1925, and five search warrants have been certified to this court. The returns on the five search warrants are, "Nothing found." The informations are in the usual form, charging the plaintiff with the possession of intoxicating liquors with intent to sell, and are made by eight different informants. Plaintiff testifies that the officers, since March 13, 1925, have been almost continuously stationed in or about his place of business, over his protest, sometimes exhibiting search warrants, other times not, searching customers as they left the store, with the result that his business has half fallen off. He testified:

"Q. Now you may state yourself whether or not, any of the time that these search warrants or this period involved in this case, you ever had or kept any liquors there for sale,—intoxicating liquors of any kind or character. A. No, sir. I did not. Q. Have you ever offered any for sale? A. No, sir. Q. Has your business been conducted legitimately and lawfully as a drug store business? A. Absolutely."

He says he had a pharmacist there, named Peet, and a colored man, named Elmore, who occupied the balcony sometimes; that he "sometimes goes up there and plays with the radio * * * for a few minutes at a time, several times a day;" that Elmore does not keep alcohol up there. Plaintiff says he was arrested February 26th, for liquor nuisance, taken to the station, and waived to the grand jury; that Peet was arrested a short time before. Plaintiff offered 12 affidavits by persons stating that they were searched, upon leaving plaintiff's store, "without said officer having in his possession or exhibiting any warrants authorizing said search." The affidavits are silent in respect to purchase or possession of intoxicating liquors. A witness testified to being searched, and that he had "no stuff

on me or in me or about me," and that the officer said he had no warrant. The defendant Cavender testified:

"I know the general reputation of the place since I became chief of police, with reference to its being a place where liquor is sold. It is bad. My statement is based upon repeated complaints and general reputation. Upon two different occasions, officers, under my direction, have secured liquor purchases at the Dietz drug store;" that Mrs. Barnett was brought to the station one night, and plaintiff was there; that he (Cavender) had said, "I expected to picket all of these bootlegging drug stores until I put them out of business;" and that his object in having the men there was to "force any bootlegger out of business. * * * Q. Isn't that true with respect to this plaintiff? A. If it is a bootlegging joint,—and it surely was."

Police Officer Sarchfield testified to making a search February 6, 1925.

"I sent a man in there to buy a bottle of liquor. His name is E. E. McBride. * * * When McBride went into the store, I was waiting in a car back of the water company's office. Couldn't see the operation. Sent Officer Taylor with him, to cover him. Before McBride went in, I searched him thoroughly for any money or liquor he might have on his person, and gave him two one-dollar bills. * * * Q. What did McBride buy, if anything, and bring back to you? A. Coming out of the place, he came to me shadowed by Officer Taylor, and I searched him and found out he was without the money * * * I had given him, and had a pint bottle of alcohol mixture. Exhibit 13 is the bottle I took from E. E. McBride. * * * The analysis on the bottle reads, '43 per cent by volume and 36 per cent by weight.' * * * We immediately went to this place with a search warrant, and, after reading the same to G. R. Peet, pharmacist in charge, we proceeded to search the premises. * * * We went to the balcony * * * and found the porter known as 'Toots' Elmore sitting at the radio there, and there were several brown gallon bottles around him, one marked tincture of alcohol, and we smelled of it, and it smelled very much like alcohol he had purchased. * * * We arrested G. R. Peet as the man that had made the sale. We took him to the

station * * * McBride was taken to the station, and G. R. Peet was taken before McBride and identified by McBride as the man of whom he had made the purchase of the liquor from. * * * On February 26th, I went there in company with a lady, Mrs. J. C. Barnett, alias Billy Barnett, who made a purchase for us in the same manner. She made her purchase of Mr. Dietz, the proprietor. I was standing directly across the street. * * * I saw her go into the store * * * and walked to the back of the store and said something to Mr. Dietz * * * and Mr. Dietz went back of the prescription case and came out, and she went back where he was * * * and they made some kind of a transaction, and she immediately came out and delivered to me the change of the $5.00 bill * * * and a half-pint bottle of alcohol. * * * The bottle which has been marked Exhibit 14 is the bottle taken from Mrs. J. C. Barnett on the night of this search when she came out of Dietz's drug store.''

The witness identified Exhibit 15 as an affidavit made by Mrs. Barnett in his presence. The affidavit states that affiant bought a bottle of liquor for $2.00 from the Dietz drug store, February 17, 1925; on February 19, 1925, a bottle for $1.00; on the 24th, a bottle for $2.00; one Wednesday night, two bottles at a dollar each; all bought at the Dietz drug store. It further states:

''Tonight, in company with officers, I went to the Dietz drug store and bought one bottle, for which I paid $1.00. * * * This bottle was bought from Frank Dietz, proprietor.''

The witness Sarchfield further testified:

''Q. Did Mrs. Barnett make any identification of the party of whom she had purchased this liquor, at the time she was in the custody of the police? A. She did when confronted by Mr. Dietz at the station. She identified him as the man of whom she had made the purchase.''

There was no contradiction of this evidence. The court asked whether counsel had other evidence, stating that he presumed ''it is in the nature of cumulative,'' to which de- fendants' counsel answered, ''Yes.'' The court temporarily enjoined the defendants from searching or causing to be searched any of plaintiff's customers in the store or on the sidewalk,

without having a search warrant, and from picketing plaintiff's place of business or the sidewalk about it, and from molesting or loitering about the place of business, and from interfering with the business unless the police officers had a search warrant, in accordance with the law, and from harassing and annoying plaintiff by repeated investigations.

The two bottles of alcohol have been certified to this court. On this evidence it must be found, as a fact, that the plaintiff, during the time complained of, was selling, on the premises in question, intoxicating liquors.

As the case comes here, the plaintiff is conducting a nuisance condemned by both Federal and state statutes. This is so though what he may claim to be his principal business, that of druggist, is lawful. The illegal part of the business, whether small or great, taints the whole, and, in proper proceedings for the purpose, would authorize the court to order the place to be closed. The test of such a nuisance is not the number of sales or the length of time liquor is kept upon the premises. The sale of intoxicating liquors establishes for the place a reputation, and brings customers there who will continue to frequent the place and render difficult the prevention of further violations of the law. *United States v. Stevens* (Conn.), 130 Atl. 249, 252; *Singer v. United States* (C. C. A.), 288 Fed. 695, 696; *United States v. Boynton*, 297 Fed. 261, 267; *United States v. Thomas*, 4 Fed. (2d Series) 857. See *State ex rel. Hammond v. Hamilton*, 200 Iowa 343. Plaintiff comes to the bar of the court as the petitioner. The plaintiff's own illegal conduct and his violations of the law are at the foundation of and inherent in the cause and occasion of the alleged wrongful conduct of the defendants of which he complains. It is true that their illegal conduct, if any, is in no wise excused, palliated, or extenuated by that of the plaintiff; but the plaintiff, in the presentation of that question, stands in the attitude of flouting and criminally violating the law. Himself subject, in proper proceedings, to injunction, and the premises for which he claims protection exposed, by his violation of the law, to closure, the plaintiff appeals to a court of equity to restrain the officers of the law from continuing their efforts against him for its enforcement. Under

most elementary principles governing a court of equity in determining whether or not it will issue its process of injunction, the plaintiff, standing at its bar, as he does, with unclean hands, will be denied relief. *Cassady v. Cavenor,* 37 Iowa 300; 1 Pomeroy's Equity Jurisprudence (4th Ed.), Sections 397 to 404; *Weiss v. Herlihy,* 23 App. Div. 608 (49 N. Y. Supp. 81); *Pittsburgh, C. C. & St. L. R. Co. v. Town of Crothersville,* 159 Ind. 330 (64 N. E. 914); *Danciger v. Stone,* 187 Fed. 853; *Modern Horse Shoe Club v. Stewart,* 242 Mo. 421 (146 S. W. 1157).; *Delaney v. Flood,* 183 N. Y. 323 (76 N. E. 209, 2 L. R. A. [N. S.] 678); *Pon v. Wittman,* 147 Cal. 280 (81 Pac. 984, 2 L. R. A. [N. S.] 683); 21 Corpus Juris 191; 32 Corpus Juris 285; *Eden Musée Am. Co. v. Bingham,* 125 App. Div. 780 (110 N. Y. Supp. 210).

See, also, *Joyner v. Hammond,* 199 Iowa 919; *Mart & Son v. City of Grinnell,* 194 Iowa 499; *Kelly & Co. v. Conner,* 122 Tenn. 339 (123 S. W. 622); Note 4 A. L. R. 44 *et seq.*

The temporary writ should not have been allowed. The order is—*Reversed.*

EVANS, STEVENS, FAVILLE, and VERMILION, JJ., concur.

ALBERT, J., dissents.