State of Iowa ex rel. Vernon R. Seeburger, Appellee, v. F. H. Dietz et al., Appellants.

**APPEAL AND ERROR:** Review—Presumptions—Incompetent Evidence
1  **in Equity Proceedings.** It must be presumed on appeal in an equity proceeding that the court disregarded incompetent testimony which was received under proper objection.

**INTOXICATING LIQUORS:** Nuisance—Injunction, Abatement, and Tax.
2  A decree of injunction, abatement, and assessment of mulct tax will not be disturbed on a record revealing proof of the existence of the nuisance.

De Graff and Albert, JJ., dissent as to the assessment of the mulct tax on the instant record.

Headnote 1:  4 C. J. p. 776.  Headnote 2:  33 C. J. p. 700.

Headnote 1:  2 R. C. L. 204.

*Appeal from Polk District Court.*—Hubert Utterback, Judge.

JANUARY 11, 1927.

Appeal from a decree of injunction against a liquor nuisance.—*Dismissed* as to appellants Dietz and Peet; *affirmed* as to appellants Gadd, Garver, and McGlothlen.

*Wilson & Shaw*, for appellants Dietz and Peet.

*J. L. Parrish, Jr.*, for appellants Gadd, Garver, and McGlothlen.

*Vernon R. Seeburger*, for appellee.

Faville, J.—Dietz was the proprietor of a drugstore in the city of Des Moines. Peet was his employee. The title to the property rested in the appellants Gadd, Garver, and McGlothlen, as trustees of the estate of one Garver. The court found that

intoxicating liquors had been kept and sold on said premises by Dietz and Peet, and adjudged that said parties be permanently enjoined from maintaining a nuisance on said premises. The decree also enjoined the appellants Gadd, Garver, and McGlothlen, as trustees of the estate of Garver, from maintaining or allowing a nuisance to be maintained upon said premises or the ground upon which the building is located. The decree further ordered that said nuisance be abated, and that the building be closed for a period of one year unless sooner released as provided by law. The decree further recites:

"It is further ordered, adjudged, and decreed that the statutory mulct tax of $600 be and the same is hereby imposed against G. R. Peet and F. H. Dietz personally, and against the premises hereinbefore described."

Notice of appeal was served by the defendants Dietz and Peet, but no argument has been filed in their behalf, and the appeal as to them is deemed abandoned, and it is ordered dismissed.

The appellants Gadd, Garver, and McGlothlen have seen fit to submit but two propositions, and they rest their appeal wholly upon them. The first of these is as follows:

"The court erred in taking into consideration, at the time he decided this case, the testimony of Officer Brown, relative to the statements made by the two alleged liquor purchasers."

The case was tried in equity, and the court made no rulings upon the admissibility of testimony. Under such a situation, it

1. APPEAL AND ERROR: review: presumptions: incompetent evidence in equity proceedings. is presumed on appeal that the court's decision was based only on competent testimony, in the absence of a showing to the contrary. *Joyner v. Utterback*, 196 Iowa 1040, and cases cited. There was evidence in the record, outside of the testimony referred to, to sustain the findings and decree of the district court.

The second proposition urged by the appellants is as follows:

"That the plaintiff has failed to establish by competent evidence that any liquor was manufactured, sold, dispensed, or kept on said premises in violation of the law."

The evidence in behalf of the appellee tended to show at least two separate sales of intoxicating liquor upon said premises, as well as the finding of alcohol which, at the time of a

2. INTOXICATING
LIQUORS: nui-
sance: injunc-
tion, abate-
ment, and tax.
search of said premises, appeared to have been very recently rendered unfit for use as a beverage by the insertion of crystals of bichloride of mercury, portions of which were still visible in the liquid. There was testimony to the effect that the reputation of the place as a place where intoxicating liquors were sold was bad. Such evidence was admissible. Section 2022, Code of 1924. The evidence regarding sales was substantially the same as in *Dietz v. Cavender*, 201 Iowa 989. It was sufficient to establish that the place was maintained as a nuisance.

No other propositions than the two above discussed are argued or presented in any manner whatever by appellants. We find no merit in any of the matters claimed by appellants. The decree of the district court must, therefore, be affirmed.

The appeal as to Dietz and Peet will be dismissed; as to Gadd, Garver, and McGlothlen, it will be affirmed. It is so ordered.—*Dismissed as to appellants Dietz and Peet; affirmed as to appellants Gadd, Garver, and McGlothlen.*

STEVENS, VERMILION, and MORLING, JJ., concur.

DE GRAFF, J., dissents.

ALBERT, J., joins in dissent on legal question.

DE GRAFF, C. J. (dissenting).—I regret that I am unable to concur with the view taken by the majority of the court in the affirmance of that part of the decree which provides "that the statutory mulct tax of $600 be and the same is hereby imposed against the premises hereinafter described."

The petition of the relator herein contains the allegations that the defendants Peet and Dietz had established and were operating and maintaining a nuisance in a certain described building or place; that the defendants Gadd, Garver, and McGlothlen, trustees of the estate of George Garver, deceased, were the owners of the property. Nothing further is alleged, as shown by the record before us. The relators pray that the defendants be restrained from maintaining a nuisance; that the ground and building be declared a nuisance and abated; and for the assessment of a mulct tax.

It is to be observed that the petition does not allege or in any manner refer to knowledge on the part of the trustees of

the existence of the nuisance, nor does it allege any facts which it is claimed put the defendant-trustees on notice as to the existence of the alleged nuisance.

The defendant-trustees, in answer to the petition, denied each and every allegation contained therein, except the allegation that the defendants, as trustees, were the owners of the property described. The defendant-trustees further denied any knowledge or information of any kind or nature that any intoxicating liquors of any kind had been sold or dispensed on the said premises, and asserted that, if the alleged nuisance existed, it was without the knowledge or consent of these defendants.

A general denial is sufficient to join issue in a case of this character, and denies every allegation expressly made in the petition and every implication of the law in relation thereto. The answer of the trustees was, in effect, a general denial. The burden of proof was upon the plaintiff throughout. My viewpoint, briefly expressed, is that the record discloses no actual or personal knowledge chargeable to the defendant-trustees, and that there is no competent evidence upon which to justify the assessment of the mulct tax against the property of the defendant-trustees, except some opinion evidence of the reputation of the place, given by a few police officers, which evidence is either outweighed or placed in equipoise by the general reputation evidence of the place given by credible and unimpeached witnesses whose places of business were in close proximity to the drug store in question.

At the threshold of this dissent, a few preliminary observations may be made.

This court has appellate jurisdiction only in cases in chancery, and is a court for the correction of errors of law under such restrictions as the general assembly may by law prescribe. Constitution of Iowa, Article V, Section 4. The instant case is triable *de novo* here.

The imposition of the "mulct tax" under the mandate of the law must find its justification in any particular case by virtue of the evidence in such case. It is, in the last analysis,, a question of fact, and not of law.

The mulct tax is not a penalty, in a strictly technical criminal sense, nor is it classifiable as the result of an exercise of the

taxing power. The taxing power of government primarily aims to provide ways and means for the carrying on of the government.

The word "mulct," as a noun, is defined: "A fine or penalty, especially a pecuniary punishment or penalty; an amercement;" and as a verb, "to punish for an offense or misdemeanor by imposing a fine or a forfeiture, especially a pecuniary fine; to exact a mulct from; to fine; amerce; hence to deprive of, as by way of punishment." Webster's New International Dictionary.

The mulct tax is imposed as a penalty by way of restraint, and had its origin by reason of the exercise of the police power of the state. It is in its nature quasi criminal, and consequently is to be strictly construed against the plaintiff.

The legislature of this state has the power to impose the so-called mulct tax, and it has seen fit to exercise that power by the imposition of the tax upon certain offenders who come within the pale of the prohibitory liquor law, and as defined by the statute. In the enforcement of this statutory provision a court should keep in mind the purpose and object of the law, and when and under what circumstances the law sanctions the imposition of the so-called tax. A court of equity should not enforce a law of this nature unless the evidence offered to support the decree is clear and convincing.

The old mulct tax, as defined by Section 2432, Code of 1897, was in force when the business of selling intoxicating liquor could be conducted in conformity to law, and a landlord who paid the mulct tax, upon the failure of the tenant so to do, as required by the terms of the lease, could recover the amount of the tax paid, in an action against the lessee. *McKeever v. Beacom*, 101 Iowa 173.

Under the present law, the saloon is an outlaw,—an illegal institution; and intoxicating liquor, generally speaking, may be viewed as contraband. The possession of intoxicating liquor, except as provided by statute, is a criminal offense, and its possessor may be subject to fine and jail. Section 1924, Code of 1924, as amended by Chapters 44 and 45, Acts of the Forty-first General Assembly of Iowa. See *State v. Boever*, 203 Iowa ——.

Section 2432, Code of 1897 (now repealed), provided that:
"Every person, partnership, or corporation, except persons

holding permits, carrying on the business of selling or keeping for sale intoxicating liquors, or maintaining a place where intoxicating liquors are sold or kept with intent to sell, shall pay an annual tax, to be called a 'mulct tax,' of $600, in quarterly installments as hereinafter provided, which tax shall be a lien upon the real property wherein or whereon the business is carried on, or where the place for selling or keeping for sale is maintained, from the time each installment of tax as hereinafter provided shall become due and payable. In case the person carrying on the business or maintaining the place is a different person from the owner of the real property wherein or whereon the business is carried on or the place maintained, then the tax shall be payable by the person conducting such business or maintaining such place.''

It is obvious that, under the old law, an owner could lawfully lease his premises for saloon purposes. Today he cannot lawfully lease his premises for any purpose within the purview of the prohibitory liquor law.

What is the position of the owner-landlord, therefore, under the present law, in the event that his building or premises are kept or used by his tenant, without the landlord's knowledge or consent, for any purpose prohibited by Title VI, Code of 1924? Does he lease for a lawful purpose at his peril? Clearly not. He may enter into a contract of lease for any lawful purpose, and neither he nor the building can be ''mulcted'' until and unless ''the owner or agent of said premises knew or ought in reason to have known of said nuisance'' adjudged to have existed on the premises. Section 2051 of the Code of 1924, under caption of ''Mulct Tax,'' reads:

''When a permanent injunction shall issue against any person for maintaining a nuisance as herein defined, or against any owner or agent of the building kept or used for the purposes prohibited by this title [Title VI], a tax shall be imposed upon said building and upon the ground upon which the same is located, and against the persons maintaining said nuisance, and against the owner or agent of said premises, when they knew or ought in reason to have known, of said nuisance.''

The mere ownership of the building or premises is not *per se* a sufficient warrant for the imposition of the mulct tax against either owner or building. The law in question does not con-

template or intend to penalize the owner by reason of the mere fact of ownership. The instant judgment is a judgment *in rem*, and it affects the rights in property of the *cestui que trustents*, and the latter are not in court in this action, either in name or by service of original notice. The Constitution of Iowa guarantees to all men "certain inalienable rights—among which are those of * * * acquiring, possessing, and protecting property." Bill of Rights, Constitution of Iowa, Article I, Section 1.

It is apparent that the imposition of this tax may be adjudged against any person *maintaining* a nuisance, as defined. "Any person" includes both landlord and tenant, or the agent of either. But the law contemplates, however, that *the person* (the offender) shall participate or be engaged in the maintenance of the nuisance. It is not the intent of the legislature to impose the tax against the building leased for a legitimate purpose, unless the evidence in the case clearly and satisfactorily warrants a finding that the owner or his agent had knowledge or had reason to know that the building was being used contrary to the provisions of Title VI. This statute simply defines when the so-called tax may be imposed against the property, and is but a rule of evidence. The rule of "ought to know" is to be considered by the court only in so far as it satisfies the court that the property owner *did* know.

In the record in the case at bar it is shown that the trial court, in the judgment entered, found and determined "that the evidence offered is not sufficient to show that the trustees of said estate [the owner and landlord of the premises] had personal knowledge of the illegal sale of intoxicating liquor by the defendants Peet and Dietz." (The latter was the tenant, and the former the employee of the tenant on the premises.) This finding by the trial court should be binding, under the circumstances (the plaintiff not appealing), upon this court on this appeal. If the finding is viewed as not binding on this court, the evidence clearly and convincingly shows that the defendant-trustees had no knowledge whatsoever of any violation on said premises of the prohibitory liquor law, and the trial court could not properly have made any other finding. To warrant, therefore, a judgment in this particular against the defendant-trustees, without actual knowledge on their part, evidence must be adduced and shown by the record before us that the trustees

"ought in reason to have known of said nuisance." "To have known," in legal effect, means "to have knowledge." We are not dealing with "constructive notice," as that term is used and defined by the law.

What are the facts? The appellant-trustees in brief point urge that the trial court erred in receiving, over the objections of the defendant-trustees; and in taking into consideration, testimony relating to what two alleged purchasers said at the police station in regard to the purchase of liquor from the other defendants, Peet and Dietz, respectively. In this the appellant-trustees are clearly right.

It appears that two persons, a man and a woman, were used as stool pigeons in the purchase of liquor on the premises in question. Neither one of these persons was called by plaintiff to testify upon the trial of this cause, nor is it claimed that either of the trustees was present when the alleged conversation occurred at the police station, or that the trustees had any knowledge at any time of the statements claimed to have been made. Even had these alleged purchasers been called as witnesses, their testimony would be incompetent to prove knowledge as to the defendant-trustees.

According to the testimony, received over objection, one purchase was made by each of these persons. The testimony was to the effect that McBride, one of the alleged purchasers, stated at the police station in the presence of Peet, clerk in the Dietz drug store, that Exhibit 1, a pint bottle of liquor, was purchased from Peet, and that the purchaser paid $2.00 for same. The same objection was made by the defendant-trustees to the testimony that Mrs. Burnett, the other purchaser, stated in the presence of Dietz at the police station that she purchased from Dietz Exhibit 3, a pint bottle of liquor. The witness so testifying was not present at the time of either purchase. Proper and timely objections and motion to strike answer were entered of record by the defendant-trustees.

Concede, as we may, that this testimony was competent as against Dietz and Peet, to establish the nuisance, as charged, it cannot be considered as evidence against the defendant-trustees to prove knowledge on their part of the existence of the alleged nuisance, or that the trustees ought in reason to have known of said nuisance. Evidence to prove the maintenance of the nui-

sance by *one* person, and evidence to prove knowledge on the part of *another* person of the existence of the nuisance, are quite different in probative effect. The one does not include the other.

It is also claimed by plaintiff, and the claim is sustained by the majority opinion, that the evidence is quite sufficient to prove that Trustee Garver had reason ''to know'' the premises were used for an unlawful purpose, and for the sole reason that Chief of Police Cavender told Trustee Garver, who was then mayor of Des Moines, that he (Cavender) had a suspicion that Dietz and Peet had sold liquor on the premises.

It appears from the record that Mayor Garver had occasion to visit the drug store one evening, to make a purchase, and that, when he was about to leave the store, his person was searched by a police officer. At that time, Garver inquired of the officer what authority he had to search him, whether it was an arrest, and if he had a warrant to search him. To the last question the officer answered ''No.'' Nothing had happened, and there was nothing in the store that would lead Garver to suspect that there had been any unlawful sale of liquor, and he so testified.

Mayor Garver then did what any reasonable and law-abiding citizen would do. He went to the fountainhead of knowledge, the chief of the bureau of information, to wit, the chief of police of Des Moines. He made inquiry of the chief. What did he learn? Simply that there had been no arrest or conviction of anyone connected with the store, but that the chief *believed*, without stating any reason for the belief, that liquor was being sold in the place, although several searches had produced no evidence to sustain that belief.

What would Mayor Garver have learned, had he gone to his tenant to make inquiry? Would he have been justified, on the mere suspicion of the chief of police, in serving notice on the tenant to quit? Would any jury in the land, under the facts and circumstances then existing, have found against the tenant in an action to oust the tenant and forfeit the lease?

The suspicion of the chief of police did not arise to the dignity of a complaint about the place; and are we to speculate that, had Mayor Garver used super-diligence, he would have discovered more than the chief of police had, with his officers doing picket duty? We think not.

We now pass to the consideration of the reputation evidence

in this case.   Section 2053, Code of 1924, makes evidence of the general reputation of the place in an injunction proceeding admissible.   This statute is but a rule of evidence.

What is general reputation, within the meaning of this statutory provision?   Reputation is what is said of a person by his neighbors.   *State v. Prizer*, 49 Iowa 531; 22 Corpus Juris 470.   It is said in *State ex rel. Seeburger v. Pickett*, 202 Iowa 1321:

"A general reputation refers to what is said of a person or place generally in the community.   It cannot be proven by the statement of one or two individuals, but must be such as is generally current in the community. * * * [Citing cases].   It does not necessarily have to be a matter of discussion, because we have repeatedly held that the best evidence of good reputation is that nothing has ever been said or heard in the community about such a person or place.   'The best reputation is the one least talked about.'   On the other hand, to establish a bad reputation, the subject of reputation must, of necessity, have been discussed, and must have been discussed generally in the community."

The only evidence, in my judgment, upon which to base a finding which warrants the assessment of the mulct tax against the property, has to do with the reputation of the place.   At least nine witnesses testified that the *general reputation* of the place in question was good.   These witnesses were men of repute and long standing in the business circles of Des Moines.   These witnesses frequently had occasion to visit the drug store as patrons, and their places of business, respectively, were in close proximity to the Dietz drug store.   We deem it unnecessary to set out *in extenso* the testimony of each of these witnesses, but it will suffice to summarize the evidence.

J. G. Chase was engaged in the business of buying automobile paper, and his place of business was located one block west of the Dietz drug store.   He had been a patron of the store for at least six months prior to the time in question.   He testified that he knew what the general reputation of the place was, and that it was good.

"It does not have the reputation of being a place where liquor is sold or dispensed.   I think if it had been a bootlegging joint, I would have heard about it."

George Koons was an officer of the Iowa Wheel & Rim Corporation, and his place of business had been located, for several years, three doors west of the Dietz drug store. He had occasion to be in the drug store many times. He testified that the general reputation of the place was good.

"Outside of the police picketing, I heard no question at all in regard to the place."

J. H. Morsch was custodian of the Masonic Temple building, situated directly across the street from the drug store, and had been such custodian for over a year. He had occasion to be in the Dietz store three or four times a week. He testified that the general reputation of the place was good, and that he had never seen anything that would indicate that it was a place where intoxicating liquor was sold. Morsch was one of the patrons of the store who were searched without any search warrant.

To the same effect, bearing on the general reputation of the place, the following witnesses testified: R. B. Mitchell, automobile dealer, place of business one block east of the drug store, engaged in business at that place for over two years; George A. Howard, wall paper and paint business, almost directly across the street from the drug store, visited the store two or three times a week; J. Goldberg, furniture business, for more than three years in same place of business, a short distance from the drug store; Clarence B. Hill, manager of the Barr Supply House, place of business directly across the street from the drug store, same location for eight months prior to the time in question; J. H. Matthews, automobile business, about a half block from the store, same location for several years.

As against this general reputation testimony by business men of that community, who surely were in a position to learn of the reputation of the place, we have the reputation testimony of police officers, who, acting under the instructions of their superior, had made repeated searches for liquor, not only in the drug store, but of the patrons of the store, and found nothing. This happened during the period of time when Trustee Garver was searched.

The activity of the officers in attempting to discover evidence may be commendable, but it appears that they had little regard for legal procedure in attempting to secure the evidence. The police, by round table discussion at the police station, con-

cluded that the reputation of the Dietz drug store was bad. It must be borne in mind that these police officers testified to such reputation as existed among themselves, as officers, and not what was said generally in the community. However, the testimony of the police officers on reputation being given due weight and credit, it clearly does not outweigh the testimony of disinterested and unimpeached business men, who I feel were in a better position to know the *general reputation* of the place, which must and ought to be distinguished from mere *police reputation*, created in the manner indicated.

I am constrained to hold that the record, in the light of the governing statute, does not justify the imposition of the mulct tax against the premises of the defendant-trustees, and in this particular the decree entered should be reversed.

ALBERT, J.—I concur with this dissent so far as the legal phases are concerned, but express no opinion on the fact end of it.